UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA ALMEIDA, | No. 2:17-cv-02615 CKD |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born January 19, 1969, applied on February 20, 2014 for disability insurance benefits (DIB), alleging disability beginning December 28, 2010. Administrative Transcript ("AT") 25, 185-191. Plaintiff alleged she was unable to work due to lupus, fibromyalgia, Sjogren's syndrome, sleep apnea, blood disorder, anti-phospholipid syndrome, TMJ disorder,

asthma, kidney disorder, chronic abdominal pain, esophagus problems, and depression. AT 98. In a decision dated September 20, 2016, the ALJ determined that plaintiff was not disabled.[1] AT 25-38. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 28, 2010 through her date last insured of December 31, 2014.
>
> 3. Through the date last insured, the claimant had the following severe impairments: systemic lupus erythematosus, Raynaud disease, degenerative disc disease, situs inversus, and diabetes with peripheral neuropathy.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work. Specifically, the claimant could lift and/or carry ten pounds frequently, twenty pounds occasionally; she can stand and/or walk for six hours out of an eight-hour workday; she can sit for six hours out of an eight-hour workday; she is able to frequently reach, handle, finger, feel and push and pull with her upper extremities bilaterally; she can frequently climb ramps and stairs; she is not to climb ladders, ropes or scaffolds; she can occasionally balance, stoop, kneel, crouch, and crawl; and she is to avoid all exposure to dust and fumes and extreme cold.
>
> 6. Through the date last insured, the claimant was capable of performing past relevant work as a file clerk and customer service. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.
>
> 7. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 28, 2010, the alleged onset date, through December 31, 2014, the date last insured.

AT 27-38.

The ALJ also made alternative Step Five findings that, considering the claimant's age, work experience, and residual functional capacity ("RFC"), there were other jobs that exist in significant numbers in the national economy that the claimant also could perform. AT 36. "Giving maximum benefit of doubt to the claimant, and adding simple unskilled work to the [RFC] capacity above, the vocational expert testified that given all of these factors the individual could not do past work, but would have been able to perform the requirements of representative occupations" such as cashier, office worker, and bottle line attendant. AT 37.

"Again giving maximum benefit of doubt to the claimant and adding simple unskilled work to [a] sedentary [RFC], the vocation expert testified that" an individual could perform the requirements of representative occupations such as telemarketer, surveillance system monitor, call-out operator, or election clerk. AT 37. Based on the VE's testimony that such jobs existed in significant number in the national economy, the ALJ found plaintiff not disabled for this alternate reason, along with the ability to perform past relevant work. AT 37-38.

////

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly evaluated plaintiff's impairments at Step Two; (2) the ALJ had a duty to develop the record at Step Three; (3) the RFC was not supported by substantial evidence; (4) the ALJ improperly discounted plaintiff's and her mother's statements.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

////

////

ANALYSIS

A. Step Two

Plaintiff asserts that the ALJ erred at Step Two by finding only five severe impairments despite plaintiff's contention she had many more severe impairments[2], and a voluminous medical record documenting multiple medical issues and diagnoses.

The ALJ found the following impairments to be severe: systemic lupus erythematosus, Raynaud disease, degenerative disc disease, situs inversus, and diabetes with peripheral neuropathy. AT 27. The ALJ noted that while he did not find obesity to be a severe impairment based on the objective evidence, "the functional limitations adopted herein generously consider the claimant's weight and its effect on her ability to ambulate as well as her other body systems."[3] AT 27-28.

The ALJ also found that plaintiff's "medically determinable impairment of depression did not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere." AT 28. The ALJ found plaintiff to have a mild limitation in activities of daily living, citing her reported daily activities of housework, swimming, shopping, and preparing meals, and to have mild limitations in social functioning and concentration, persistence, or pace. AT 28. The ALJ concluded that plaintiff's mental limitations were nonsevere. AT 29.

An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). An impairment is "not severe" only if it "would have no more than

---

[2] In her pre-hearing statement, plaintiff contended that "[h]er medically determinable severe impairments consist of lupus, gout, Sjogren's syndrome, fibromyalgia, sleep apnea, depression, anxiety, type II diabetes with peripheral neuropathy, moderate kidney disease, extreme obesity, sciatica, scoliosis, carpal tunnel syndrome bilaterally, antiphospholipid antibody syndrome with chronic DVT in the left arm, Kartagener syndrome, moderate degenerative disc disease of the lumbar spine, nutcracker esophagus, iron deficiency anemia requiring infusions, multiple medication allergies/adverse reactions, and asthma." AT 296.

[3] The ALJ noted that plaintiff's weight of 279 pounds and height of 5'8" put her body mass index (BMI) at 42.4, considered "extreme obesity." AT 27.

a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

As the Ninth Circuit explained in Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017), "Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (Internal quotes and citations omitted.)

Here, plaintiff acknowledges that the ALJ referenced many of plaintiff's non-severe claimed impairments in the RFC discussion. The ALJ considered the objective medical evidence of plaintiff's multiple claimed impairments, as well as opinion evidence regarding her ability to perform work-related functions. AT 30-35. The ALJ considered, for example, a 2016 internal medicine evaluation by consultative examiner Dr. Richard Chun, who noted plaintiff's numerous diagnoses and complaints, reviewed her medical history, performed a thorough physical exam with largely normal findings, and opined as to certain physical and environmental limitations. AT 33, 1274-1285. The ALJ gave great weight to the opinions of State agency psychologist Dr. Peter Bradley, who reviewed plaintiff's medical file and concluded that she did not have a severe mental impairment, and State agency psychiatrist Dr. L. Colsky, who similarly concluded that plaintiff's mental impairments were non-severe. AT 35, 91, 104-105. Plaintiff has not shown harmful error at Step Two.

////

B.  Duty to Develop the Record

Plaintiff next claims that the ALJ erred by failing to develop the record at Step Three, where the ALJ concluded that plaintiff's impairments did not meet or medically equal the severity of a listed impairment in 20 C.FR. Part 404, Subpart P, Appendix 1, including listing 1.00 (Musculoskeletal Disorders), 9.00 (Endocrine Disorders), 12.00 (Mental Disorders), and 14.00 (Immune System Disorders). AT 29.

The ALJ briefly explained that "[n]o treating or examining physician has recorded credible findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairment." AT 29. The ALJ referenced the RFC discussion of the medical evidence in support of this conclusion. AT 29.

Evidence raising an issue requiring the ALJ to investigate further depends on the case. Generally, there must be some objective evidence suggesting a condition that could have a material impact on the disability decision. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th Cir. 1991). "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen, 80 F.3d at 1288.)

Here, plaintiff argues that "in the context of such an overwhelming number of bodily problems the ALJ had a duty to develop the record" to determine if her impairments met the criteria for Listing 14.02, systemic lupus erythematosus (SLE).[4] (ECF No. 16 at 10.) However, the record regarding plaintiff's SLE was not so ambiguous as to trigger a duty to develop. The ALJ noted that in 2014, plaintiff received a "working diagnosis of lupus" with no clinical findings, and that her diagnosis of lupus was noted as mild in July 2014, with largely normal

---

[4] The SLE listing requires (A) the involvement of two or more organs/bodily systems to at least a moderate level of severity, with one of the organs/bodily systems involved to at least a moderate level of severity, and at least two of the constitutional symptoms and signs (severe fatigue, fever, malaise, or involuntary weight loss); or (B) repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and marked limitations in activities of daily living, social functioning, or concentration, persistence, or pace. 20 CFR Pt. 404, Subpt. P, App'x 1, Listing 14.02.

physical examinations. AT 32-33; see AT 829-829, 1274-1285. Plaintiff does not point to record findings of severe fatigue, fever, malaise, or involuntary weight loss. The ALJ found her to have only mild limitations in activities of daily living, social functioning, and concentration persistence, or pace, citing plaintiff's ability to shop, do housework, handle her finances, and look for work. AT 28; see, e.g., AT 675 (Dr. Gunton's exam note that plaintiff "indicated no significant problems with managers or coworkers in the past" and was "independent for basic [activities of daily living]"), AT 676-677 (opining that plaintiff had mild psychological limitations and no significant limitations as to simple or complex tasks). The ALJ accurately noted that no treating or examining physician made "credible findings equivalent in severity to the criteria of any listed impairment." Plaintiff has not shown harmful error at Step Three.

### C. Residual Functional Capacity

Plaintiff next claims that the RFC is not supported by substantial evidence because the ALJ did not explain its relationship to various medical opinions, all of which he gave "great weight." The ALJ noted that, in weighing these opinions, "no single assessment has been completely adopted as the RFC determined herein. Instead, the undersigned has adopted a [RFC] that is best supported by the objective evidence as a whole." AT 34. The ALJ determined that plaintiff was able to perform less than the full range of light work with environmental limitations, noting that "the functional limitations adopted herein generously consider the claimant's weight and its effect on her ability to ambulate as well as her other body systems." AT 27-28, 29.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person "can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of

work[.]" 20 C.F.R. §§ 404.1545(a)(4).

Here, the ALJ's RFC assessment was consistent with the opinion of consultative examiner Dr. Chun, AT 1274-1278, and largely consistent with the opinions of two State agency physicians who assessed plaintiff's physical functional capacities and found her capable of light work with some restrictions. AT 92-94, 106-108. The ALJ relied on opinions from physicians who specifically considered plaintiff's obesity in their functional assessments. AT 94 (limiting plaintiff to light work "on the basis of morbid obesity"), AT 108 (same), AT 1280-1285 (functional assessment with diagnosis of obesity). The ALJ also relied on the opinion of consultative examiner Dr. R. Ryan Gunton, who "opined mild mental limitations . . . based on an in-person exam, well-supported by objective, medically acceptable clinical and laboratory diagnostic techniques . . . and . . . largely consistent with the record as a whole." AT 35, 673-677. The ALJ also credited the opinions of two State agency doctors who concluded that plaintiff's mental impairments were non-severe. AT 35, 91, 104-105.[5]

The ALJ was not required to adopt any one medical opinion, but "was entitled to draw from all the medical evidence in the record, including portions of the . . . functional limitations posited by [physicians], in order to resolve conflicts in the medical evidence." <u>Chao v. Astrue</u>, 2012 WL 868839, *11 (E.D. Cal. Mar. 13, 2012); 20 C.F.R. §§ 404.1527(e)(2) ("Although we consider opinions from medical sources on issues such as ... your residual functional capacity ..., the final responsibility for deciding these issues is reserved to the Commissioner"). The undersigned finds no error in the ALJ's evaluation and weighing of medical opinions with regard to the RFC.

D. <u>Credibility</u>

Plaintiff asserts that the ALJ erred by discounting plaintiff's and her mother's symptom allegations. "Specifically, the self-asserted limitations described in the claimant's testimony have been considered within the residual functional capacity stated herein," the ALJ wrote. AT 30.

---

[5] Moreover, the ALJ made alternate Step Five findings that even with a RFC for sedentary, simple unskilled work, plaintiff could perform representative jobs such as telemarketer and clerk. AT 37. Insofar as plaintiff contends the RFC should have included these limitations, the error is harmless.

9

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ summarized plaintiff's testimony that she had pain all over her body, joint pain, numbness in her wrist and hands, headaches, gout, fatigue, and depression, among other symptoms. AT 30; see AT 69-74. "Despite the alleged impairment, the clamant has engaged in a somewhat normal level of daily activity and interaction," the ALJ wrote. AT 30; see, e.g., AT 675 (noting "[c]laimant is independent for basic ADL's, and does not need help with preparing

meals"); AT 767 (2011 medical note that plaintiff swam three times a week).

The ALJ also summarized the objective medical record, AT 31-34, concluding that "the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations. . . . The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual and the claimant's alleged loss of function is not supported by alleged medical findings. The treatment record reveals the claimant received routine, conservative, and non-emergency treatment since the alleged onset date." AT 31. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1176 (9th Cir. 2008) (ALJ did not err in discrediting claimant's testimony when the alleged severity of her symptoms was "disproportionate and not supported by the objective medical findings nor any other corroborating evidence" and the record reflected claimant performed "normal activities of daily living").

As the ALJ noted, plaintiff's imaging and diagnostic studies were largely normal aside from "modest degenerative findings" in her lumbar spine. AT 31-32; see AT 511, 87, 469, 318-319, 729-730, 913. In November 2014, plaintiff was diagnosed with DVT in the left upper extremity, but a January 2015 ultrasound indicated that it had partially resolved by that time. AT 926, 1145. The RFC accounted for these mild abnormalities in plaintiff's back and left arm by limiting plaintiff to less than the full range of light work with exertional and postural limitations. AT 29.

Nor did plaintiff's physical examinations reveal debilitating symptoms, in contrast to plaintiff's allegations. AT 32; see, e.g., AT 828 (normal neck, cardiovascular, lungs, musculoskeletal and extremity examinations), AT 845-846 (same, with mild plantar fasciitis in left foot and mild crepitus in knees, but "joints look great" ), AT 860 (reduced sensation in feet but normal muscle bulk and tone, 5/5 strength in upper and lower extremities, gait without significant ataxia), AT 1147 (no lower extremity edema, normal gait, "patient looks quite good actually"), 1274-1285 (largely normal findings by consultative examiner Dr. Chun).

As to plaintiff's allegedly disabling mental impairments, the ALJ noted an April 2012 diagnosis of "depression doing fairly well" (AT 535), along with multiple mental status findings of normal mood, affect, orientation, judgment, and speech. AT 33-34; see 323, 367, 860, 904,

987-988, 1142, 1157, 1181, 1230. In the psychiatric consultative examination with Dr. Gunton, plaintiff "indicated that her depression is more manageable due to her medications and coping skills" and described her psychiatric symptoms as "in the mild range." AT 35, 673-674. Her mental status exam was normal, and Dr. Gunton concluded that she was "mildly limited" due to mood symptoms that "cause[] her to isolate from time to time." AT 35, 677.

Based on the foregoing, the ALJ reasonably concluded that the objective medical evidence did not support her claims of disabling physical and mental impairments. The ALJ also evaluated plaintiff's reported daily activities for consistency with her claimed level of impairment. As the ALJ used proper process and provided proper reasons, the court defers to his credibility determination.

Finally, plaintiff contends that the ALJ erroneously discounted the third-party statement of plaintiff's mother, Arlette Almeida, who stated that plaintiff was "extremely fatigued with her lupus, pain, [and] fibromyalgia," and suffered from hand tremors and stiff joints. AT 31; see AT 233-214. The ALJ discounted this testimony for several reasons: It was not given "under oath"; Ms. Almeida was not a medical professional competent to opine on how plaintiff's symptoms affected her ability to work; she had a financial incentive to see plaintiff receive benefits and therefore her opinion was not unbiased. AT 31. "Most importantly, the clinical or diagnostic medical evidence that is discussed more thoroughly below does not support her statements." AT 31.

"[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill, 12 F.3d at 918-19 (friends and family members in a position to observe a plaintiff's symptoms and daily activities are competent to testify to condition). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919; see also Stout v. Commissioner SSA, 454 F.3d 1050, 1056 ((9th Cir. 2006) (where ALJ fails to properly discuss competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless it can confidently conclude no reasonable ALJ, when fully crediting testimony,

could have reached different disability determination). Moreover, "the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout, 454 F.3d at 1054).

Here, even if some of the reasons the ALJ supplied for discounting Ms. Almeida's testimony were arguably improper, the main reason -- inconsistency with the objective medical evidence – was the same reason he discounted plaintiff's similar testimony as to the severity of her impairments. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason.") (internal citation omitted); Valentine v. Comm'r, 574 F.3d 685, 694 (9th Cir. 2009) (where ALJ provided sufficient reasons for rejecting claimant's own testimony, "it follows that the ALJ also gave germane reasons for rejecting" similar testimony of lay witness). Plaintiff has not shown harmful error on this basis.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 21) is granted; and

3. Judgment is entered for the Commissioner.

Dated: March 4, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/almeida2615.ssi.ckd